NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0560n.06

Case Nos. 13-2206/2284

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 25, 2014
DEBORAH S. HUNT, Clerk

TRANSPORTATION INSURANCE                )
COMPANY, et al.,                        )
                                        )        ON   APPEAL   FROM   THE
        Plaintiffs-Appellees/Cross-Appellants,  )    UNITED  STATES  DISTRICT
                                        )        COURT  FOR  THE  EASTERN
v.                                      )        DISTRICT OF MICHIGAN
                                        )
CITIZENS INSURANCE COMPANY OF           )
AMERICA,                                )        O P I N I O N
                                        )
        Defendant-Appellant/Cross-Appellee.  )


BEFORE: MOORE and McKEAGUE, Circuit Judges; and STAFFORD, District Judge.[*]

   McKEAGUE, Circuit Judge.   David Perez, Jr., was seriously injured on June 26, 2007,
while working as a masonry worker on a courthouse construction site in Macomb County,
Michigan, when a twelve-foot long metal wall stud fell from above and struck him on the head,
rendering him a quadriplegic. The ensuing investigation and state court litigation resulted in a
settlement pursuant to which Perez was paid $12 million in compensation for his injuries. This
amount was paid by insurers of the general contractor and a subcontractor. Pursuant to the
settlement agreement, the insurers of the general contractor reserved the right to seek
indemnification from another subcontractor, Perez's employer, and its insurer. They are entitled

---

   [*]Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of
Florida, sitting by designation.

to indemnification unless Perez's employer had no fault in the accident. The indemnity action was filed in the Eastern District of Michigan and the district court conducted a bench trial in March 2012. The district court held that Perez's employer's negligence contributed to the accident and ordered indemnification in the amount of $5 million, but declined to award prejudgment interest. This appeal followed. For the reasons set forth below, we affirm.

## I. BACKGROUND

The facts are not disputed. The Dailey Company ("Dailey") was the general contractor on the courthouse construction project in Clinton Township in June 2007. Perez's employer, Giannola Masonry Company (Giannola"), was a subcontractor. On June 26, Perez was assigned to erect a block wall along the east side of the ground floor. Directly above the location where Perez was working, the exterior wall of the second floor had not been completed. Bundles of wall studs had been off-loaded and stacked on the second floor at that point. Apart from a two-and-three-quarter-inch toe board on the edge of the second floor, and a guardrail consisting of two steel cables attached to the building's steel columns, the area above the second floor was open and exposed. Early in the afternoon, an employee of another subcontractor, Huron Acoustic Tile Company ("Huron"), who was installing studs on the west side of the building, walked to the northeast side of the second floor to retrieve a bundle of wall studs. As he removed one bundle of studs from the west side of the pile or "bunk," the unstable bunk tilted and shifted, causing studs to slide or roll over the east edge of the second floor and fall to the ground. Perez was struck on the head and seriously injured.

An accident investigation was conducted by the Michigan Occupational Safety and Health Administration ("MIOSHA"). The investigation resulted in issuance of citations to Dailey and Huron for violations of the Michigan Occupational Safety and Health Act, consisting

of: (1) storing materials less than ten feet from an exterior wall that does not extend above the top of the material stored (Huron); (2) failing to stack materials on level and solidly supported sills, causing instability in the stack of materials (Huron); (3) failing to install a toe board of at least three and one-half inches in height (Dailey and Huron); and (4) failing to train competent persons in proper procedures for handling and storing materials and the erection of overhead protection (Dailey and Huron).

Perez subsequently sued Dailey and Huron in state court for negligently failing to maintain a safe work space. The litigation resulted in a July 2008 settlement agreement based on the parties' acceptance of the case evaluation award of $12 million. Pursuant to the agreement, Transportation Insurance Company and National Fire Insurance Company of Hartford ("the CNA Insurers" or "CNA"), on behalf of Dailey, agreed to pay $6 million; Selective Insurance Company, on behalf of Huron, agreed to pay $5 million; and Citizens Insurance Company of America ("Citizens"), on behalf of Giannola, agreed to pay $1 million. CNA expressly reserved the right, however, to proceed against Citizens (a) for recovery of the $6 million it paid, under the theory that Dailey was an "additional insured" under its policy, and/or under a theory of contractual indemnity pursuant to the subcontract between Dailey and Giannola; and (b) for recovery of fifty percent of the defense costs in the *Perez* litigation.

In December 2008, CNA commenced action against Citizens in the Eastern District of Michigan. The district court granted partial summary judgment in favor of CNA on August 17, 2010. The court held (1) that CNA was entitled to indemnification unless Perez's injuries were attributable solely to the negligence of Dailey and its subcontractors other than Giannola, but that there remained a question of fact as to whether Giannola was negligent; and (2) that Dailey was an "additional insured" under Giannola's policy with Citizens, entitling CNA to recover

$1 million from Citizens, as Dailey's subrogee. As a consequence of this ruling, the $6 million sum that CNA could potentially recover pursuant to the settlement agreement on its contractual indemnity theory was reduced to $5 million. The court noted that the matter of defense costs had been separately resolved by the parties. None of these rulings are at issue in this appeal.[1]

The district court conducted a bench trial in March 2012 and, one year later, issued its findings of fact and conclusions of law. The court concluded that Giannola breached the duty it owed Perez under Michigan law to act reasonably in providing a safe work place. Specifically, the court determined that Neil Schroeder, Giannola's foreman at the work site, did not act with reasonable care when he gave Perez his work assignment without first going up to the second floor to visually inspect the area overhead for falling hazards. Finding that Perez would not have been injured but for Schroeder's failure to perform an adequate inspection, the court held this failure was a proximate cause of Perez's injuries. The court awarded judgment to CNA in the amount of $5 million and established a briefing schedule to address the outstanding question of CNA's entitlement to prejudgment interest. On August 29, 2013, the court denied CNA's request for prejudgment interest, holding that its total recovery was capped at $6 million by the settlement agreement, which precluded recovery of prejudgment interest in excess of the cap. Citizens timely appealed the $5 million award, contending the district court erred in its holding that Giannola was negligent, and CNA timely cross-appealed the denial of prejudgment interest.

---

[1]By stipulated order, the parties confirmed the understanding that CNA's claim for defense costs was resolved and subject to dismissal with prejudice; that CNA's claim for recovery under the "additional insured" theory was subject to dismissal with prejudice; and that CNA's claim for indemnification was reduced and satisfied to the extent of $1 million.

## II. ANALYSIS

### A. Giannola's Negligence

Citizens challenges the district court's holding that Giannola's negligence contributed to causation of Perez's injuries. Citizens contends that a preponderance of the evidence supports the conclusion that Schroeder's inspection of the work site was reasonable and that the accident was caused solely by the negligence of Dailey and other subcontractors. The parties agree that our review is de novo.

The district court's analysis is explicitly set forth in its findings of fact and conclusions of law. Citizens concedes that the district court's fact findings are accurate. As a preface to its conclusions of law, the court acknowledged that the parties agreed that Dailey and Huron were negligent. The court also noted that, although MIOSHA Safety Officer Brian Renaud cited both Dailey and Huron for safety violations, he did not cite Giannola for any violation.

Renaud determined that Schroeder's visual inspection of the second floor from the ground level was reasonably diligent and that it was not reasonable to expect Schroeder to go to the second floor to inspect because he had no indication of continuous work activity there. Although the district court did not expressly reject Renaud's opinion, it made several salient observations. First, the court noted Renaud's acknowledgement that a different MIOSHA safety officer, faced with same facts and circumstances, could have reached a different conclusion regarding Giannola's negligence. The court also noted Renaud's acknowledgement that a reasonable person would have understood that he would not be able to see short objects on the second floor from Schroeder's vantage point on the ground approximately forty feet from the site of the accident. The court further noted Renaud's testimony that it would be reasonable to understand that such unseen objects could fall over the edge of the second floor. The court thus

concluded, from Renaud's own testimony, that Renaud's ultimate opinion was not persuasive and that "a reasonable person would have gone upstairs to inspect the area to determine if there were in fact any unseen objects." R. 94, Order at 18, Page ID 2644.

Similarly unpersuasive, in the view of the district court, was the opinion of Citizens' expert, Steven Williams, that Schroeder exercised reasonable care. The court noted that Williams agreed with Schroeder that, if he had seen the studs stacked so close to the edge of the second floor, he would have had the duty to go up to the second floor to inspect further before permitting Perez to work in that location. Thus, again, the court impliedly reasoned, consistent with a portion of Williams' own testimony, that if a reasonable person would have understood that a potentially hazardous condition could be present on the second floor but evade observation from below—but which, if observed from the second floor, would be recognized as a hazardous condition—then a failure to go upstairs to inspect further would not be reasonable and would render the inspection inadequate. *Id.*[2] "In light of the severity of the potential injury, a reasonable person would have expended the relatively minimal additional time it would have required to go up to the second floor to inspect for falling hazards." *Id.* at 19, Page ID 2645.

This conclusion by the district court was directly supported by the opinion of the expert originally retained by Perez, Michael Wright, who testified that Giannola was negligent in that (a) it failed to adequately train its foreman Schroeder, and (b) Schroeder failed to conduct an adequate inspection. Yet, just as significant to the court's assessment of Giannola's negligence was the testimony of Schroeder himself. The court noted that Schroeder, who acknowledged that he was responsible to ensure the work site safety of Giannola workers, also acknowledged

---

[2]The court also discredited Williams' opinion that Giannola was not negligent because it was based on an unreasonably narrow construction of the scope of work within which he believed Giannola was responsible to detect and abate hazards. R. 94, Order at 20 n.5, Page ID 2646.

having been trained "to go upstairs and inspect the location above where you are going to place workers to see if there are any objects that can fall." *Id.* at 5, Page ID 2631; R. 82, Trial Tr. vol. 1 at 117, Page ID 2077. Had he acted in accordance with his training, Schroeder conceded, he would have observed the positioning of the bunk of wall studs in close proximity to the edge of the second floor and recognized that they represented a hazardous condition requiring abatement before Perez would have been allowed to work below. R. 94, Order at 5–6; Page ID 2631–32; R. 82, Trial Tr. vol. 1 at 121–23, 126–27, Page ID 2081–83, 2086–87.

The court correctly recognized, consistent with its earlier partial summary judgment ruling, that under the subcontract between Dailey and Giannola, Dailey was entitled to indemnification from Giannola unless Perez's injuries arose solely from Dailey's negligence and the negligence of other subcontractors directly responsible to Dailey. R. 94, Order at 15–16, Page ID 2641–42. Citizens has not challenged this conclusion of law. It follows that Citizens was obliged to indemnify Dailey unless CNA failed to show that Giannola's negligence, along with that of Dailey and Huron, was *a* contributing causal factor. The court held that CNA carried its burden:

> Here, the cause in fact element of causation is plainly satisfied. It is clear that but for Giannola's breach, Perez would not have been injured. Indeed, Schroeder acknowledged that he would not have placed his masons at their work sites if he had observed the location of the bunk where it had been stored. Thus, but for his failure to perform an adequate inspection, Perez would not have been injured. Thus, the Court concludes that this proximate causation element has also been satisfied.

*Id.* at 22–23, page ID 2648–49 (footnote omitted). The court further explained that although it believed Dailey and Huron bore "far more responsibility for the accident," Giannola's negligence also played a role and this was sufficient to trigger its duty to indemnify. *Id.* at 23, n.6, Page ID 2649.

On de novo review, we find no error in the district court's assessment, based on the above record evidence, that CNA carried its burden of showing that Schroeder's undisputed conduct made out a breach of duty that represented a proximate cause of Perez's injuries.

Citizens maintains that the district court erred as a matter of law by relying on MIOSHA standards to hold that Giannola breached its duty under Michigan law to behave as a reasonable subcontractor-employer without considering the totality of circumstances presented in a worksite shared by numerous contractors. The argument is directly refuted by the explicit reasoning of the district court's opinion. The court noted that MIOSHA standards can be used, consistent with Michigan tort law, as helpful guides in determining the relevant standard of care and whether a duty was breached. R. 94, Order at 15–17, Page ID 2641–43. Yet, clearly, the court's determination that Giannola's conduct was not free of negligence and that its negligence, however slight, contributed to causation of the accident, is properly based on consideration of all the relevant circumstances and steeped in the duty-breach-causation-damages elements of a common law tort claim for negligence. *Id.* at 16–26, Page ID 2642–52.

The district court was faced with a tragic accident, conflicting opinions, and an arguably close legal question. The court's opinion shows that it carefully deliberated over the record evidence under the governing law and made a sensible and fair evaluation. We find no legal error in its judgment.

### B. Prejudgment Interest

Having awarded CNA the full amount recoverable under its reservation of rights in the parties' settlement agreement, the district court denied CNA's request for prejudgment interest as precluded by the agreed-to cap. In its cross-appeal, CNA claims this was error, arguing that

award of prejudgment interest to the prevailing party is mandatory under Michigan law. Again, we review de novo.

Under Michigan law, "[i]nterest is allowed on a money judgment recovered in a civil action, as provided in this section." Mich. Comp. Laws § 600.6013(1). Award of prejudgment interest has been deemed "mandatory in all cases to which the statute applies." *Everett v. Nickola*, 599 N.W.2d 732, 735 (Mich. Ct. App. 1999). Accordingly, CNA contends it is entitled to interest, pursuant to Mich. Comp. Laws § 600.6013(8), in the amount of $636,799.22.

We note first that the Michigan case law describing prejudgment of interest as "mandatory," like *Everett*, is based on a version of the statute that has since been amended. In 2001, the Michigan legislature changed "interest shall be allowed" to "interest is allowed." 2001 Mich. Pub. Act No. 175. Whatever else the import of this change may be, it clearly signals an intent to render award of prejudgment interest less mandatory than it formerly was.

Further, the district court's denial of prejudgment interest as barred by the settlement agreement cap was consistent with its earlier partial-summary-judgment refusal to award CNA attorney fees and costs incurred in bringing this action. *See* R. 22, Order at 22, Page ID 480. This earlier ruling has not been challenged on appeal. Hence, the court's denial of prejudgment interest, based on the determination that CNA expressly released "any and all claims" against Citizens except the claim for indemnification of the $6 million, is harmonious with and arguably dictated by the "law of the case."

Moreover, we find no error in the district court's strict enforcement of the language carefully chosen by counsel for the parties in drafting the settlement agreement. CNA acknowledges that its right to proceed with this litigation is defined by the settlement agreement. The language of that agreement both preserved and limited CNA's right to proceed with this

litigation to recover $6 million. And by that language, as the district court observed, CNA agreed to release "any and all" other claims against Giannola and Citizens, including "all claims, demands, damages and causes of action of whatsoever kind or nature, either in law or equity, on account of any . . . loss, expense or damages of any kind." R. 112, Order at 3, Page ID 2858 (quoting R. 13-14, Settlement Agreement ¶ 3(a), Page ID 294–95). Award of prejudgment interest would constitute a recovery for other "loss, expense or damages of any kind," a claim for relief from which CNA expressly released Citizens.

In sum, on de novo review, we uphold the district court's denial of prejudgment interest as proper under the law and judicious.

### III. CONCLUSION

For the foregoing reasons, we find no merit in the claims of error asserted by Citizens in its appeal and by CNA in the cross-appeal. The judgment of the district court is therefore **AFFIRMED**.